## LIMITATION OF ACTION ON AN ACCOUNT STATED.

[Circuit Court of Erie County.]

WILLIAM DEERING & CO. v. H. G. MILLER AND C. A. WIKEL, LATE PARTNERS UNDER THE FIRM NAME OF MILLER & WIKEL.*

Decided, April 22, 1899.

*Statute of Limitations—Application of, to an Account Stated—Promise in Writing—Abbreviated Contracts and Agreements in Writing— Implied Promise to Pay—Actions under Section 4980.*

Where the debtor under an account stated affixed thereto a declaration in writing that the amount shown was due from him, and this was signed by him and accepted in writing by the creditor, the paper constitutes in law a promise in writing to pay the claim, although no promise to pay is specifically made; or if not a promise in writing, such a paper is at least an agreement in writing within the meaning of Section 4980; and the bar of the statute to an action thereon arises, not in six years, but fifteen years from the date thereof.

MARVIN, J. (sitting in place of HULL, J.); HAYNES, J., and PARKER, J., concur.

Error to Erie Common Pleas Court.

This is a proceeding in error seeking to reverse the judgment of the court of common pleas. The determination of the case rests upon the effect to be given to the statute of limitations as applied to a writing which was executed by the defendants and which is set out in the bill of exceptions giving all of the evidence in the case.

The defendants were partners under the firm name of Miller & Wikel, doing business in this county, and were handling the goods of William Deering & Co., of Chicago, having been engaged in this business for some time. They were handling these goods on commission. They had received for goods sold certain amounts, and had forwarded or paid to Deering & Co. certain moneys, and on October 28, 1890, the defendants stated an ac-

---

* Affirmed without report, *Wickel* v. *Deering & Co.*, 64 O. S., 548.

count between themselves and the plaintiff and entered upon such statement of account these words:

Huron, Ohio, October 28, 1890. This adjustment of accounts made this day as per the foregoing statements, showing as due Wm. Deering & Co., as the proceeds of these commission goods not yet paid over, the sum of $479.75 after deducting all credits, set-offs or claims due us by reason of any and all matters and things growing out of the business or otherwise due to this date, tendered by me, subject to the acceptance of Wm. Deering & Co. at their Chicago office.

This was signed by Miller & Wikel and accepted by William Deering & Co.

On the part of the plaintiff it is urged that this was an agreement entered into between the parties to this action, and that they were entitled to bring suit upon it at any time within fifteen years after its execution, because of its being in writing; while on the part of the defendants it is urged—and that is the only defense sought to be made, as shown by the bill of exceptions—that this is not such an agreement in writing as is included within the language of Section 4980, Revised Statutes, but that it is such an agreement as that suit must be brought within six years from its date. Section 4979, Revised Statutes, reads:

"Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of the action accrues."

And Section 4980, Revised Statutes:

"Within fifteen years: An action upon a specialty, or an agreement, contract, or promise in writing."

The suit was brought more than six years not only after the execution of the contract, but after any payment which could be regarded as an acknowledgment of the debt. The court of common pleas found that the statute of limitations ran against the claim of the plaintiff, on the ground that this was not such a contract as is contemplated by Section 4980, Revised Statutes.

The claim is made on the part of the defendants that there

must be a promise in writing to bring an agreement or contract within the terms of Section 4980, Revised Statutes. On the other hand, it is contended that there need not necessarily be a promise, that in any event there need not be an express promise, but if there be an agreement entered into and that be in writing, then a suit may be brought upon such agreement at any time within fifteen years.

It is said on the part of the plaintiff that this contract has in it a promise to pay the amount stated in the contract to be owing and to be due from the defendants to the plaintiff; that because the defendants acknowledged by that writing that there was due from them to the plaintiff the sum of $479.75, the law incorporates into that a promise to pay and that it is to be read as though it contained an express promise to pay.

There is a case, *Haines* v. *Tharp*, 15 Ohio, 130, to which the attention of the court has been called. On page 133 of the opinion this language is used:

"An indorsement is a written contract of which the law declares the effect; and when counted upon, it is the foundation of the action, and a plea that the cause of action did not accrue within six years is no bar under the statute."

It is said that the fact that the courts hold than an indorsement upon commercial paper is a contract, is a promise, although there is no express promise to pay, does not result from the fact that the law implies a promise to pay from such indorsement, but that it is an abbreviated contract, and the case of *Farr* v. *Ricker*, 46 Ohio, 265, is cited in support of this claim. The first clause of the syllabus of that case reads:

"The indorsement of a negotiable promissory note, made to transfer the title to one who has purchased it for value, is, though in blank, an abbreviated contract in writing, whereby the indorser binds himself to pay the note if on presentment the maker does not, and due notice is given him of such non-payment; and, in the absence of fraud or mistake, the legal effect of such indorsement can not be varied by parol."

The opinion, Judge Minshall, on page 266, quotes the following from Mr. Justice Matthews in the case of *Martin* v. *Cole*, 104 U. S., 30, 37:

"The contract created by the indorsement and delivery of a negotiable note, even between the immediate parties to it, is a commercial contract, and is not, in any proper sense, a contract implied by the law, much less an inchoate or imperfect contract. It is an express contract, and is in writing, some of the terms of which, according to the custom of merchants and for the convenience of commerce, are usually omitted, but not the less, on that account, perfectly understood. All its terms are certain, fixed and definite, and, when necessary, supplied by that common knowledge, based on universal custom, which has made it both safe and convenient to rest the rights and obligations of parties to such instruments upon an abbreviation."

It is urged that there is a distinction to be made between an abbreviated contract such as the indorsement of commercial paper and the reading into a contract, such as the one in this case, words which the law fixes as the legal result of the words which are used. There is a case, *Waring* v. *Railway*, 3 Bull., 893, the head-note of which reads:

"Though a bill of lading is silent as to the goods being delivered within a reasonable time, yet that obligation is part of the written contract, and an action for failure to deliver in a reasonable time is not barred in six years, but in fifteen years."

Judge Burnet, in his opinion, says:

"It is the duty of a common carrier, when goods are tendered to him for transportation, to receive them upon being paid a reasonable compensation for his services, and within a reasonable time to deliver them at the place of destination, and for a refusal except upon good cause, to undertake the service, a right of action exists against the carrier. When goods are delivered to a carrier for transportation, the contract which the law implies is, whether there be any writing or not, that the carrier, for a reasonable compensation, will within reasonable time deliver the goods at the place of destination to the consignees. If there be a bill of lading given at the time the goods are delivered to the carrier, that bill of lading comprises not only a receipt for the goods, but a contract to fulfill the obligation which the law imposes on the carrier, and although the words be not put in the bill of lading that the carrier will deliver within a reasonable time, that is the legal interpretation of the contract which he enters into when the bill of lading is given, there being nothing put into the bill of lading to exclude that interpretation;

and in the case of a bill of lading, then, that is a part of the contract in writing, and the right of action will subsist for fifteen years without being barred by the statute.''

And the reporter says, page 554:

''The court here referred to the case of *Haines* v. *Tharp*, 15 Ohio, 130, and said it was precisely similar in principle to the case at bar. In intendment of law, the contract contained in the bill of lading was to deliver within a reasonable time, and the contract was in writing, and was not barred in six years.''

We are impressed with the soundness of the reasoning of Judge Burnet, and it seems to us that to say that, where one enters into such a contract as the one here sued upon, there is no promise on the part of the debtor to pay the debt because there is not in words a promise to pay, is to do violence to well-settled principles. The law implies in such a contract as the one in this case, as in such an one as Judge Burnet was discussing— a bill of lading—a promise. It is said that the suit must be brought upon a *contract* in writing under the statute, and that there must necessarily be a *promise* in writing. . We think it is sufficient if there is a promise in the contract, and that there is by law just as distinctly understood, just as completely settled as in the case of the indorsement of commercial paper or in a bill of lading, a promise here to pay the amount which is acknowledged to be due.

But even if that be not true, if we are wrong in that, we are still of the opinion that this contract comes within Section 4980, Revised Statutes, for it will be observed that it is not a promise to pay only to which the fifteen-year limitation applies, but an agreement or contract in writing. Now, it is agreed that this is an account stated, and an account stated is an agreement; it is an agreement entered into between the parties between whom there has been an account. An account stated is an agreement entered into between those two parties, by which one owes the other a given amount, or that the account balances—it may be such an agreement as that, but it is necessarily an agreement. When that agreement is put into writing it seems to us it clearly comes within the provisions of the statute. It certainly literally

comes within the provisions of the statute, and it seems that in reason it *should* come within the provisions of the statute.

The purpose of allowing a longer time within which suit may be brought upon a written contract than is allowed upon a parol contract, or one of the reasons, at least, is, that in the one case you must depend upon the treacherous memory of witnesses as to what the contract is, and too much time ought not to be given, whereas in the other you have it so expressed that there can be no trouble to determine what it is and that lapse of time does not take away the ability to prove what the contract is, as it does in the case of a parol contract.

A very elaborate brief is furnished on the part of the plaintiff and a great many authorities are cited, to some of which we have given attention, and those authorities are considered by the defendants in a brief filed by them. The case of *Neighbors* v. *Simmons*, 2 Blackf., 75, is very short, and attention is called to it because of the fact that not only is it cited on the part of the plaintiff, but commented upon on the part of the defendants to show, or the claim is made by defendants, that it does not apply in a case like this. The syllabus reads:

"At the foot of an account containing several items, charged $817, there was the following acknowledgment: 'I acknowledge the above account to be just. Thos. Neighbors'. *Held:* That this acknowledgment was a written contract which, under the act of assembly, was not barred by the statute of limitations."

The court says in the opinion:

"The contract, on which the action is founded, is an account of sundry items in favor of Simmons against Neighbors, amounting to one hundred and twelve dollars and sixty-two cents; the first item of which bears date the twentieth of January, 1817, * * * at the foot of which there is this writing: 'I acknowledge the above account to be just. Thos. Neighbors.' The act of assembly provides that no statute of limitations shall be pleaded as a bar, or operate as such, to any action founded on an instrument or contract in writing, whether the same be sealed or unsealed. We are of opinion that the written acknowledgment of this account forms a contract in writing, and that the plea of the statute of limitations, in this case, was inadmissible."

That reason, as we understand it, applies exactly to this case, and without stopping to read from other authorities, we have come to the conclusion that there was error on the part of the court of common pleas in holding that this was not such a contract in writing as authorized suit to be brought upon it at any time within fifteen years.

The court of common pleas, whose opinion we have before us, called especial attention to promissory notes and reasoned from the language used by Daniels and other authorities on promissory notes that this ought not to be held to be a promise, but, as has already been said, we are of opinion it is a promise, although it is not an express promise; but whether a promise or not, it is a contract in writing. It was urged in argument that if the statute read "contract, promise, or *instrument* in writing" it might well be said here is an *instrument* in writing, and that there would be more reason for saying that this came within the statute and for the reason that it is an *instrument* in writing. What kind of instrument is it? Clearly an agreement; and, therefore, it is an agreement in writing.

The definition of a promissory note given by Daniels and the definition given substantially by all the authorities is "An open promise in writing," meaning, of course, an unsealed promise in writing, "by one person to pay another, or to his order or to bearer, a sum of money" (Daniels, Negotiable Instruments, Section 28). In Sections 36 and 37 Daniels goes on to say that unless there is an express promise in a written instrument having all the other features of a promissory note, it still would not be a promissory note, and he says that it has been held that "I. O. U." so many pounds has been held in England as not a promissory note, that there is a conflict of authority as to whether an ordinary due bill is a promissory note; but we apprehend that there can be no doubt that each of those is a contract in writing. Whether it be a promissory note or not, the question before us is, whether the instrument here is an agreement or contract in writing. We hold that it is.

The judgment of the court of common pleas is reversed. And now coming to dispose of the case, as we understand under

Section 4980, Revised Statutes, we should do, we here enter the judgment that ought to have been entered in the court below. Judgment is rendered for the plaintiff for its claim.

*J. F. McCrystal* and *F. W. Babcock*, for plaintiff in error.

*Kelly & Merrill*, for C. A. Wikel, defendant in error.